UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| In Re: | Chapter 7 |
| CHARLES ATWOOD FLANAGAN, | |
| Debtor. | Case No. 99-30565 (ASD) |
| TITAN REAL ESTATE VENTURES, LLC | |
| Plaintiff | |
| vs. | Adv. Pro. No. 04-3146 |
| M.J.C.C. REALTY L.P., et al. | |
| Defendants. | Doc. I. D. Nos. 15, 17 |

---

**MEMORANDUM OF DECISION
ON APPLICATIONS FOR PREJUDGMENT REMEDIES**

ALBERT S. DABROWSKI, Chief United States Bankruptcy Judge

**I.  INTRODUCTION**

Before the Court at this time are two *Applications for Prejudgment Remedies* (hereafter, "Applications") filed by the Plaintiff.  The Applications require the Court to determine whether the Plaintiff has demonstrated "probable cause" that it will prevail on the merits at trial against Defendants Steven and Amy Sullivan and MJCC Realty, L.P. On the record as a whole, and for the reasons stated more fully below, this Court concludes that the Plaintiff has failed to meet its burden in the instant matters.

## II.  FACTUAL BACKGROUND

The following facts, which the Court deems material to its ruling in the instant matters, are derived from the record of a two-day evidentiary hearing, as well as this Court's review and noticing of the official files and records of the instant adversary proceeding and underlying bankruptcy case.

Prior to the commencement of the underlying bankruptcy case, the Cadle Company and/or D.A.N. Joint Venture (hereafter collectively referred to as "Cadle") purchased a delinquent debt instrument(s) on which Charles Atwood Flanagan (hereafter, "Flanagan") was an obligor.  Cadle then obtained a judgment against Flanagan, and aggressively pursued collection of the same for several years.  Flanagan, in turn, engaged in an evasive course of conduct designed to preserve his lifestyle by preventing Cadle from executing upon any of his property.

Flanagan's evasive conduct appears to have included the creation and funding of a limited partnership - M.J.C.C. Realty L.P. (hereafter, "MJCC") - which purchased and/or held legal title to at least two parcels of Connecticut real property in which Flanagan arguably held equitable interests, namely (i) 230 Millbrook Road in the Town of North Haven (hereafter, the "Millbrook Property"), and (ii) 25 Queach Road in the Town of Branford (hereafter, the "Queach Property").

The principal of MJCC was Angela Cimino Burr (hereafter, "Burr") - Flanagan's mother-in-law.  According to Burr's testimony, her role with MJCC was merely one of a figurehead.  While she was nominally the general partner of MJCC, and owned at least 95% of its equity, in reality Flanagan supplied all of the capital for its activities, and solely

directed its management. Burr further testified that she undertook her nominal role with MJCC out of love and concern for her daughter and grandchildren.

On February 17, 1999, Flanagan commenced the underlying bankruptcy case through the filing of a voluntary petition under Chapter 11. Although the fact and circumstances of Flanagan's alleged equitable interest in MJCC, and its real estate holdings, were known to Flanagan, his attorney, and the Official Unsecured Creditors' Committee (hereafter, the "Committee"), during the pendency of the Chapter 11 case neither the Committee nor Flanagan as debtor-in-possession ever pursued an action to bring MJCC and/or its assets into the bankruptcy estate.

On January 16, 2003, Flanagan's Chapter 11 case was converted to a case under Chapter 7. Bonnie Mangan (hereafter, the "Trustee") was thereupon appointed trustee of Flanagan's bankruptcy estate. Almost immediately upon her appointment the Trustee became aware of Flanagan's putative interest in MJCC and its assets. The Trustee declined to initiate an adversary proceeding in pursuit of MJCC or its assets for the benefit of the bankruptcy estate. Instead, on August 4, 2004, she sold "any and all interest . . . which [she] . . . may have . . . in and to MJCC . . . together with any and all interest which . . . [she] may have . . . in [the Millbrook and Queach Properties]" to Titan Real Estate Ventures, LLC - the Plaintiff here (hereafter, "Titan" or "Plaintiff") - for the sum of $15,000.00 cash and 2.5% of "any net recovery . . . [Titan] receives as a direct result of its purchase of" the subject rights and interests.

Meanwhile Cadle had become increasingly frustrated by Flanagan's evasive conduct, and the failure of bankruptcy estate fiduciaries to pursue MJCC or its assets for

the benefit of the bankruptcy estate. Among other things, Cadle commenced litigation in the United States District Court for the District of Connecticut, on or about April 4, 2001, in which it sued some 13 defendants on civil RICO claims, alleging that the defendants were co-conspirators in an effort to assist Flanagan in evading Cadle's judgment execution activity (hereafter, the "RICO Litigation").

One of the defendants in the RICO Litigation was Burr. In or about January 2003, Cadle settled its RICO claims against Burr in the following manner: in exchange for a full release of any and all claims Cadle had against her, Burr agreed to assign to Cadle her interest in MJCC. By virtue of that assignment Cadle achieved control over MJCC and its assets, and, through MJCC, began a process of marketing those assets to compensate for its losses vis-a-vis Flanagan.

On or about March 30, 2004, Cadle, through MJCC, sold the Millbrook Property to Defendants Steven and Amy Sullivan (hereafter, the "Sullivans") for approximately $475,000.00. With respect to the Queach Property, Cadle, through MJCC, has attempted to evict a tenant there in a preliminary step toward its intended marketing and sale of that property. The Queach Property tenant is one William Nygard (hereafter, "Nygard"), who is the former owner of that Property. Flanagan and/or MJCC (while under Flanagan's control) purchased the Queach Property from Nygard, but granted a 15-year lease to allow him to remain in possession of the property.

As assignee of the Trustee's rights, Titan now seeks to recover the Millbrook and Queach Properties, or their value, for its own benefit. As Plaintiff here, Titan is prosecuting claims against MJCC and the Sullivans, *inter alia*, via a Second Amended

Complaint (hereafter, the "Complaint"). The pending Applications represent the Plaintiff's effort to secure, through prejudgment attachment, what it hopes will be a judgment rendered in its favor after a trial on the merits.

The parties to the Applications conducted a two-day evidentiary hearing before the Court, followed by extensive briefing. The Court having now fully reviewed the evidentiary record, as well as the oral and written arguments of the parties, provides the following observations in connection with its ruling.

### III.  DISCUSSION

**A.  Legal Standards.**

Connecticut prejudgment remedies are generally available to litigants in federal court through Fed. R. Civ. P. 64's incorporation of state law rights and procedures.[1] Under Connecticut General Statutes § 52-278d(a) prejudgment remedies are available only if, *inter alia*, "the plaintiff has shown probable cause that . . . a judgment will be rendered in the matter in the plaintiff's favor . . . ." Thus, the Plaintiff, as applicant, must shoulder the burden of demonstrating the requisite "probable cause". E.g., Bosco v. Arrowhead by the Lake, Inc., 53 Conn.App. 873, 875, 732 A.2d 205 (Conn. App. 1999).

The Court's function in a prejudgment remedy dispute is not to provide a final ruling on the merits, but "to determine whether there is *probable cause to believe* that a

---

[1] Fed. R. Bank. P. 7064 provides that "Rule 64 F.R. Civ. P. applies in adversary proceedings."

Fed. R. Civ. P. 64 provides in pertinent part as follows:

> At the commencement of and during the course of an action, all remedies providing for seizure of . . . property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought . . . . The remedies thus available include . . . attachment . . . .

judgment will be rendered in favor of the plaintiff in a trial on the merits." <u>Bank of Boston Connecticut v. Schlesinger</u>, 220 Conn. 152, 156, 595 A.2d 872 (1991) (emphasis supplied). In this respect, the Court enjoys broad discretion. <u>E.g.</u>, <u>Nash v. Weed & Duryea Co.</u>, 236 Conn. 746, 749, 674 A.2d 849 (1996).

**B. Analysis.**

The starting point for an analysis of probable cause is necessarily an assessment of the claims made by the Plaintiff against those parties from whom prejudgment relief is sought. The 12-count Complaint states five such claims - (i) "piercing the corporate veil", (ii) turnover, (iii) conversion, (iv) unjust enrichment, and (v) constructive trust (hereafter, the "Titan Claims").

As noted in the Factual Background, above, the Titan Claims are derivative of the rights of the Trustee. That means that the Plaintiff will prevail here only if, and to the extent that, the Trustee would have prevailed on such claims at a point in time immediately prior to her assignment of rights and interests to the Plaintiff. Accordingly, the Court now turns to an analysis of the viability of the Titan Claims in the hands of the Trustee.

**1. "Piercing the Corporate Veil".**

The claim denominated as "piercing the corporate veil" in Count Eleven of the Complaint is a bit of a misnomer. In fact, that claim does not involve a *corporate* entity; it more accurately concerns "piercing the veil" of an *individual* - Flanagan - to access the assets of MJCC - a limited partnership allegedly under his complete dominion and control. This type of action is sometimes referred to as "reverse piercing".

In the classic corporate veil piercing scenario the proponent seeks to disregard an entity's nominal (corporate) form and subject the estate of a shareholder, or other equitable owner, to claims against the (corporate) entity. By contrast, in the present case of *reverse* piercing, an attempt is being made to render the assets of an entity - the limited partnership, MJCC - subject to the obligations of its alleged equitable owner - Flanagan.

"Reverse piercing" claims have been recognized as viable causes of action in Connecticut. See, e.g., Litchfield Asset Management Corp. v. Howell, 70 Conn.App. 133, 151, 799 A.2d 298, cert. denied, 261 Conn. 911, 806 A.2d 49 (2002). Indeed, the same equitable principles supporting traditional "piercing" can be present in the context of "reverse piercing" as well. On the record presented before this Court to date, it appears that equity would compel the marshaling of the assets of MJCC to account for the debts of Flanagan. Nonetheless, for the reasons that follow, *inter alia*, the Court concludes that the Plaintiff has not demonstrated probable cause that it will prevail on its "reverse piercing" claim.

The Defendants argue, *inter alia*, that the "piercing" claim (hereafter referred to as the "Alter Ego Claim") was lost by operation of the statute of limitations of Bankruptcy Code Section 546(a), *inter alia*, prior to the Trustee's assignment of that claim to the Plaintiff. Bankruptcy Code Section 546(a) states, *inter alia*, that a trustee may not commence an "action or proceeding under section 544, 545, 547, 548, or 553" after, at the latest, "1 year after the appointment or election of the first trustee under section 702 .

. . ." On the record of this case and adversary proceeding it appears beyond dispute that Section 546(a)'s limitations period expired prior to the Trustee's assignment to Titan.[2] Thus, if the Alter Ego Claim is subject to Section 546(a)'s limitations, Titan received a stale claim from the Trustee.

The Plaintiff's response to this limitations defense is two-pronged, to wit: (i) that because Flanagan allegedly made no *transfers* in connection with his acquisition of control over the Millbrook and Queach Properties, the Alter Ego Claim was not subject to the temporal limitations of Section 546 in the hands of the Trustee; and (ii) that the Alter Ego Claim actually arises under Section 541 of the Bankruptcy Code - a Code section not subject to the limitations provisions of Section 546.

      a. *The necessity of transfers*.

The Plaintiff asserts that Section 546(a) limits only the Trustee's *transfer-avoidance* actions, and because Flanagan allegedly made no transfers in connection with the assets of MJCC, the Trustee's piercing claims were not subject to temporal limitation under Section 546. Unfortunately for the Plaintiff, its premise is faulty - Section 546(a) concerns more than transfer avoidance actions. The Bankruptcy Code sections enumerated there - *i.e.* Sections 544, 545, 547, 548, and 553 - create and authorize, *inter alia*, non-transfer-related trustee actions, equitable in nature, which may be possessed by hypothetical creditors of a debtor. Specifically, one of the enumerated provisions, Section 544(a), provides, *inter alia*, that –

---

[2] It is also possible, if not likely, that the limitations period of Section 546(a) ran during the Chapter 11 phase of Flanagan's bankruptcy case. *See* 11 U.S.C. § 546(a)(1)(A).

-8-

> "[t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the *rights and powers* of . . . (2) *a creditor* that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an *execution against the debtor that is returned unsatisfied* at such time, whether or not such a creditor exists . . . ."

(emphasis supplied).

The Alter Ego Claim is certainly the sort of equitable action - whether involving a transfer or not - which could have been pursued by an unsatisfied execution creditor of the Debtor outside the context of bankruptcy. See, e.g., Koch Refining v. Farmers Union Central Exchange, Inc., 831 F.2d 1339, 1345 (7th Cir. 1987) (". . . alter ego theory is an equitable, remedial doctrine that may be asserted by any creditor without regard to the specific nature of his relationship with the . . . [debtor] and its alleged alter ego."). Therefore, to the extent that the Alter Ego Claim is premised upon Section 544(a)(2), or any other section enumerated in Section 546(a), it is probable that even if the Trustee possessed that claim, she lost it by virtue of the limitation of 546(a) prior to her assignment to Titan.

### b. *Claim arising under Section 541.*

In further response to the Defendants' limitation argument, the Plaintiff asserts that its Alter Ego Claim arises under Section 541 - a section not enumerated in Section 546(a) - and therefore is not subject to the limitations of Section 546(a).

As noted above, it seems certain that the Alter Ego Claim is a cause of action that can be asserted by an unsatisfied judgment creditor, and thus, in that respect, owes its bankruptcy viability to Section 544(a)(2). See, e.g., id.; see also, Boyce, Steven E., Koch

<u>Refining and In Re Ozark: The Chapter 7 Trustee's Standing to Assert an Alter Ego Cause of Action</u>, Am. Bank. Law J. (Summer 1990). The question raised by the Plaintiff is whether a trustee may also derive her rights in an alter ego claim by virtue of Section 541.

Section 541(a)(1) provides that the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Further, Second Circuit authority suggests that alter ego claims may arise under Section 541. In <u>Pepsico, Inc. v. Banner Industries, Inc.</u>, the Court of Appeals, considering bankruptcy trustee rights in an alter ego claim, observed that "[u]nder the Bankruptcy Code, the trustee may bring claims founded, *inter alia*, on the rights of the debtor . . . , *see, e.g.,* 11 U.S.C. § . . . 541 . . . ." 884 F.2d 688, 700 (2d Cir. 1989). Thus, it follows that the Trustee could have possessed the Alter Ego Claim *by virtue of Section 541*, but only if, at the time he filed his bankruptcy case, *Flanagan himself* had a recoverable "equitable interest" in MJCC, and/or its property, within the meaning of Section 541(a)(1). In other words, outside the context of bankruptcy, would Connecticut law have afforded Flanagan the right, in essence, to pierce his *own* "veil" and have MJCC declared his alter ego? This Court determines that it would not.

First, the Plaintiff has not cited, and the Court cannot locate, any Connecticut authority permitting a debtor - corporate or otherwise - to pierce his/its own veil. Even if such an equitable action existed in favor of a debtor, that action would be subject to any equitable defenses that are suggested by the facts. Chief among these defenses in the present context is the *in pari delecto* doctrine.

-10-

The *in pari delecto* doctrine is a well-recognized defense under Connecticut law. The doctrine provides that actions brought on illegal or corrupt bargains cannot prevail if the parties are *in pari delicto*, *i.e.* where the plaintiff is a significant participant in the wrongdoing, bearing at least equal responsibility for the violations he seeks to redress. See, e.g., Greenberg v. Evening Post Association, 91 Conn. 371, 375, 99 A. 1037 (1917). "The real objection is not to one man's unclean hands but to the whole enterprise. The court does not want to touch an unlawful transaction with a ten-foot pole. It always refuses to help carry it out, and it often refuses to pick up the pieces after the enterprise has fallen apart. Courts were set up to enforce the law, not to enforce violations of law." Zappone v. Zappone, 8 Conn. L. Rptr. 449, 1993 WL 73674, *5 (Conn. Super. 1993). When the parties are involved in an illegal transaction, the court will leave the parties where it finds them. Funk v. Gallivan, 49 Conn. 124 (1881). The following language of Funk is particularly apropos under the facts that necessarily underlie the Alter Ego Claim, if asserted under Code Section 541: "In such cases the defense of illegality prevails, not as a protection to the defendant, but as a disability in the plaintiff. Upon this principle[,] possession acquired . . . will often avail the parties holding it as a sufficient title . . . the transaction takes effect from the disability of the parties to assert any right to the contrary. The court does not give it effect, but simply refuses to aid to undo what the parties have already done." Id., at 129.

Nor does it appear that any principle of bankruptcy law would immunize the Trustee – whose Section 541(a)(1) rights are derived directly from the pre-petition

-11-

property rights and disabilities of Flanagan.  See, e.g., Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145, 1150-52 (11th Cir. 2006); cf. Official Committee of Unsecured Creditors of Color Tile v. Coopers & Lybrand, LLP, 322 F.3d 147, 158-66 (2d Cir. 2003).

Here, the facts as known to the Court at this time portend that because of his apparent wrongdoing in the formation, funding and operation of MJCC, Flanagan would not have had a legally-enforceable pre-petition right to pierce his own veil to bring the assets of MJCC into his own estate.  Further, the Plaintiff here has not demonstrated any fact or legal principle that would nonetheless have permitted the Trustee to pursue what is essentially the identical claim - the Alter Ego Claim - pursuant to Section 541.

Because the existing record suggests that it is more probable than not that the Trustee (i) could not have prosecuted the Alter Ego Claim under Section 541, and (ii) failed to commence the Alter Ego Claim pursuant to Section 544 within one year of her appointment, the Plaintiff, whose rights are derived directly from those of the Trustee, has not demonstrated probable cause that it will prevail on the Alter Ego Claim.

**2. Turnover.**

In the Third, Fourth and Fifth Counts of the Complaint, the Plaintiff seeks turnover from MJCC and the Sullivans of the Queach Property and the Millbrook Property, or the proceeds or income therefrom.

Code Section 542(a) provides in relevant part that ". . . an entity . . . in possession, custody, or control, during the case, of *property that the trustee may use, sell, or lease* under section 363 . . . , shall deliver to the trustee, and account for, such

property or the value of such property, unless such property is of inconsequential value or benefit to the estate." (emphasis supplied).

Under Section 363(b), the Trustee may only "use, sell, or lease . . . *property of the estate.*" (emphasis supplied). For the Millbrook Property and/or Queach Property to become property of Flanagan's bankruptcy estate the Trustee would first have to prevail on a declaratory cause of action such as the Alter Ego Claim. See, e.g., 11 U.S.C. §§ 541(a)(1), (3), (7). For the reasons stated in Section III.B.1. of this Memorandum of Decision, the Plaintiff has not demonstrated probable cause that it will prevail on a prerequisite action of that nature. Thus there is necessarily a lack of probable cause that it will prevail on a turnover claim.

**3. Conversion.**

In the Sixth and Seventh Counts of the Complaint, the Plaintiff seeks to hold MJCC liable for conversion with respect to the Millbrook and Queach Properties.

Conversion under Connecticut law is an unauthorized assumption and exercise of the right of ownership over property belonging to another, to the exclusion of the owner's rights. See, e.g., Aetna Life and Cas. Co. v. Union Trust Co., 230 Conn. 779, 790, 646 A.2d 799, 804 (1994). Thus, if the Trustee lost her rights, if any, in the assets of MJCC prior to her assignment to Titan, there is no basis for a conversion claim since the Trustee would then have had no ownership rights to be offended.

For the reasons stated in Section III.B.1. of this Memorandum of Decision, the Plaintiff has not demonstrated probable cause that it will overcome MJCC's Section 546(a) defense to the Alter Ego Claim. Thus there is necessarily a lack of probable cause that it will prevail on a conversion claim.

### 4. Unjust Enrichment.

In the Eighth, Ninth and Tenth Counts, the Plaintiff seeks to recover from MJCC for "unjust enrichment" with respect to the Millbrook and Queach Properties.

"A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." Providence Electric Co., Inc. v. Sutton Place, Inc., 161 Conn. 242, 246 (1971) (internal citations omitted). "It is clear that in order to recover on the basis of unjust enrichment, it is necessary for a plaintiff to demonstrate two aspects of the transaction. First, it must be shown that the defendant was benefited [sic]; that is, he has received something of value. And second, it must be shown that the benefit was unjust; that it was not paid for by the defendant, to the detriment of the plaintiff." Id.

Putting aside the preliminary question of whether unjust enrichment doctrine applies outside the context of contractual relations or some other form of direct privity between the parties,[3] there is at present an insufficient factual record for this Court to conclude that MJCC was unjustly enriched. Once again, this begs the question of the

---

[3] "Unjust enrichment applies 'where ever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract.' 5 Williston Contracts (Rev.Ed.) § 1479." *Providence Electric Co., supra*, 161 Conn at 246.

viability of the Alter Ego Claim, for if the Trustee lost that Claim under Section 546(a), then the subject assets did not come under MJCC's control "at the expense of" the Trustee.

### 5. Constructive Trust.

In the First and Second Counts, the Plaintiff seeks to have MJCC declared to be a constructive trustee of the Queach and Millbrook Properties; and in the Twelfth Count, the Plaintiff seeks to have the Sullivans declared to be constructive trustees of the Millbrook Property.

In Connecticut, "a constructive trust arises . . . against one, who by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds legal title to property which he ought not, in equity and good conscience, hold and enjoy. Zack v. Guzauskas, 171 Conn. 98, 103, 368 A.2d 193 (1976).

The Plaintiff's constructive trust claim also begs the question of the viability of the Alter Ego Claim, for if the Trustee lost that Claim under Section 546(a), then arguably it would not be "against equity and good conscience", vis-à-vis the Trustee, for another to obtain control over the subject assets.

## IV.  CONCLUSION

For the foregoing reasons the pending Applications for Prejudgment Remedies shall be **DENIED** by separate orders.

Dated: August 15, 2006　　　　　　　　　　　　　　　　　　　　BY THE COURT

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Albert S. Dabrowski
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Chief United States Bankruptcy Judge